UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| UNITED STATES OF AMERICA | ) | INDICTMENT NO. |
| --- | --- | --- |
|  | ) | CR417 197 |
| v. | ) | VIO: 18 U.S.C. § 1349 |
|  | ) | Conspiracy to Commit |
| RICHARD P. UNDERWOOD, | ) | Wire Fraud and |
|  | ) | Mail Fraud |
| and | ) |  |
|  | ) | Forfeiture Allegations |
| COLIN P. PURCELL | ) |  |

**THE GRAND JURY CHARGES**:

**Introduction**:

At all times material to this Indictment:

1. Southern Energy Group, Inc. ("SEG") was a Tennessee-based business, formed on January 2, 2013, with a business address in Gallatin, Tennessee. SEG purported to be an oil and natural gas exploration company that offered and sold investments in oil and natural gas projects in Texas and Oklahoma.

2. TennStar Energy, Inc. ("Tennstar") was a Tennessee-based business, formed on December 20, 2013 under the name of Black Gold Resources, Inc. Tennstar maintained a central office in Hendersonville, Tennessee, and a second office in Lauderdale-by-the-Sea, Florida. Tennstar purported to be an oil and natural gas exploration company that offered and sold investments in oil and natural gas projects in Texas, Oklahoma, and Kansas.

3. The investments offered by SEG and Tennstar were securities, as that term is defined in Title 15, United States Code, Section 77b(a)(1). The investments

1

were fractional undivided interests in oil, gas, and mineral rights. The investments were also investment contracts, because investors provided money to fund a common enterprise, and expected to receive an investment return generated by the entrepreneurial efforts of others associated with SEG and Tennstar.

4. Defendant **Richard P. Underwood** ("**Underwood**") lived in Fort Lauderdale, Florida, was associated with SEG, and operated and controlled Tennstar's office in Lauderdale-by-the-Sea, Florida.

5. Defendant **Colin P. Purcell** ("**Purcell**") lived in Shelbyville, Kentucky, and was a salesman for SEG and Tennstar.

6. From 2012 through February 2016, in the Southern District of Georgia and elsewhere, SEG and Tennstar utilized the internet, radio, and television to advertise opportunities to invest in SEG and Tennstar oil development projects. In written investment materials sent to investors, and during telephone calls with prospective investors, **Underwood**, **Purcell**, and others made repeated false statements to, and withheld material information from, investors in order to induce investors to invest in SEG and Tennstar's oil development projects. Through these false statements and material omissions, **Underwood**, **Purcell**, and others induced investors to invest approximately $15,000,000 in SEG and Tennstar oil development projects, which money was misappropriated and unlawfully converted by **Underwood**, **Purcell**, and others.

## COUNT ONE
18 U.S.C. § 1349
*Conspiracy to Commit Wire Fraud and Mail Fraud*

7. Paragraphs 1 through 6 of this Indictment are incorporated by reference as if fully set forth herein.

8. From in or around 2012 and continuing through February 2016, in Chatham County, within the Southern District of Georgia, and elsewhere, the Defendants herein, **Richard P. Underwood** and **Colin P. Purcell**, did knowingly and willfully combine, conspire, confederate, and agree with each other and other persons to commit certain offenses, to wit:

a. Wire Fraud, that is, to execute and attempt to execute a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, by transmitting and causing to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, visual pictures, and sounds, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343; and,

b. Mail Fraud, that is, to execute and attempt to execute a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, by utilizing the United States mail and private and commercial interstate carriers, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1341.

3

## MANNER AND MEANS OF THE CONSPIRACY

9. It was a part of the conspiracy that **Underwood, Purcell**, and others would use the internet, radio, and television to advertise opportunities to invest in SEG and Tennstar's oil development projects.

10. It was further part of the conspiracy that **Underwood, Purcell**, and others would operate call centers at the Tennessee and Florida offices of SEG and Tennstar, where salesmen telephoned prospective investors who responded to internet, radio, and television advertisements.

11. It was further part of the conspiracy that **Underwood, Purcell**, and others would make telephone calls to potential investors located throughout the United States, to convince investors to invest in SEG and Tennstar's oil development projects.

12. It was further part of the conspiracy that, Tennstar and SEG personnel would at times assume false identities when communicating with prospective investors in order to conceal that they were convicted felons and/or previously subjected to regulatory action for involvement in investment fraud schemes.

13. It was further part of the conspiracy that **Underwood, Purcell**, and others would make false statements during telephone calls with investors about the success of past oil development projects and the development, risks, and profitability of the oil development projects of SEG and Tennstar.

14. It was further part of the conspiracy that **Underwood** and others would prepare and cause to be prepared false and fraudulent offering materials, such as

4

private placement memoranda ("PPMs"), for the SEG and Tennstar oil development projects, and that Greenlee and others would cause said PPMs to be distributed to prospective investors. These PPMs contained false information about the experience and background of the management of SEG and Tennstar, and failed to reveal the identities of convicted felons that were responsible for the operation and management of SEG and Tennstar.

15. It was further part of the conspiracy that **Underwood, Purcell**, and others would send and cause to be sent false and fraudulent PPMs to prospective investors by way of mail or commercial interstate courier.

16. It was further part of the conspiracy that **Underwood, Purcell**, and others would direct some investors to send checks to the offices of SEG and Tennstar by way of the United States Postal Service or commercial interstate courier to fund investments in SEG, and Tennstar oil development projects.

17. It was further part of the conspiracy that **Underwood, Purcell**, and others would direct investors to wire transfer money to accounts held in the name of SEG, and Tennstar to fund investments in SEG and Tennstar oil development projects.

18. It was further part of the conspiracy that **Underwood** and others would prepare and cause to be prepared correspondence and assessment letters seeking additional funds from investors, which contained false and fraudulent information about the status and productivity of SEG and Tennstar oil development projects.

19. It was further part of the conspiracy that **Underwood** and others would send and cause to be sent false and fraudulent assessment letters and other correspondence to investors by way of the United States Postal Service or commercial interstate courier.

20. It was further part of the conspiracy that **Underwood, Purcell,** and others would misappropriate and unlawfully convert millions of dollars of investor funds, and use that money to pay commissions to themselves, to fix past failing oil development projects, and to pay for their personal expenses.

## OVERT ACTS

21. In furtherance of the conspiracy and to effect the objects thereof, the Defendants and others committed the below-listed overt acts, among others:

    A.  On or about June 9, 2014, **Purcell** communicated by text message with co-conspirator D.G. about investor R.D.

    B.  On or about June 9, 2014, co-conspirator D.G. placed an interstate telephone call to investor R.D. to convince R.D. to invest in an SEG oil development project, and falsely told R.D. that his name was "David Johnson."

    C.  On or about June 9, 2014, **Purcell** communicated by text message with co-conspirator D.G. about D.G.'s use of a false name during discussions with investor R.D. about investing in the SEG oil development project.

    D.  In or about 2015, members of the conspiracy caused an advertisement for a Tennstar "can't miss" oil well investment opportunity to

6

be broadcast on Sirius satellite radio within the Southern District of Georgia and elsewhere.

E. In or about July 2015, co-conspirator S.R. conducted a telephone call with an undercover United States Secret Service agent in Savannah, Georgia, and provided false information to the Secret Service agent about the experience of Tennstar's management, success of past oil well development projects, and development and profitability of a new Tennstar oil development project.

F. In or about July 2015, by way of Federal Express, **Underwood** and others sent and caused to be sent a false and fraudulent PPM about a Tennstar oil development project to an undercover Secret Service mailbox located in Savannah, Georgia.

G. In or about August 2015, members of the conspiracy caused an advertisement for a SEG "can't miss" oil well investment opportunity to be broadcast on Sirius satellite radio within the Southern District of Georgia and elsewhere.

H. In or about September 2015, co-conspirator B.B. conducted a telephone call with an undercover Secret Service agent in Savannah, Georgia, and provided false information to the Secret Service agent about the experience of SEG's management, success of past oil well development projects, and the development and profitability of a new SEG oil development project.

I. In or about September 2015, by way of Federal Express, **Underwood** and others sent and caused to be sent a false and fraudulent PPM about an SEG oil development project to an undercover Secret Service mailbox located on St. Simons Island, Georgia.

J. On or about October 27, 2015, co-conspirator D.S. conducted a telephone call with an undercover Secret Service agent in Savannah, Georgia, to convince the undercover Secret Service agent to invest in a Tennstar project. During this telephone call, D.S. made false statements to the undercover agent, including but not limited to falsely identifying himself to the undercover agent as "David Johnson."

K. In or about November 2015, **Underwood** placed an interstate telephone call to an undercover Secret Service agent about investing in a Tennstar oil and development project.

L. On or about February 4, 2016, co-conspirator S.R. conducted an interstate telephone call with an undercover Secret Service agent in Savannah, Georgia, and provided false information to the Secret Service agent about the development and profitability of a Tennstar oil development project.

M. On or about February 6, 2016, **Underwood** conducted an interstate telephone call with an undercover Secret Service agent in Savannah, Georgia, about the investment in a Tennstar oil development project.

All done in violation of Title 18, United States Code, Section 1349.

## **CRIMINAL FORFEITURE**

The allegations contained in Count 1 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

Upon conviction of the offense set forth in Count 1 of this Indictment, the defendants, **Richard P. Underwood** and **Colin P. Purcell**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property which constitutes or is derived from proceeds obtained as a result of the offense set forth in Count 1 of this Indictment.

The property to be forfeited includes, but is not limited to:

a.  **Personal Money Judgment**

   A sum of money equal to the proceeds Defendant obtained directly or indirectly as a result of the offense charged in Count 1 of this Indictment, and all property traceable thereto.

b.  **Currency and Other Monetary Instruments**

   i.   $13,138.12 in U.S. Currency (in lieu of 25.0001538 Bitcoins seized from Coinbase, Inc.)

   ii.  $213.57 seized from River City Bank account ending in XXXX4445

   iii. $586.16 seized from Commonwealth Bank & Trust account ending in XXXX1268

   iv.  $3,318.96 seized from Fifth Third Bank account ending in XXXX6093

9

If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 981 and Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 981 and 28 U.S.C. § 2461(c).

_____
James D. Durham
Acting United States Attorney

_____
Brian T. Rafferty**
Assistant United States Attorney
Criminal Division Chief

_____
Theodore S. Hertzberg**
Assistant United States Attorney

** denotes co-lead counsel

A True Bill

_____
Foreperson